## THE AMERICAN TRADING Co. *v.* EL REGISTRADOR DE LA PROPIEDAD.

Recurso gubernativo contra nota del Registrador de la Propiedad de Mayagüez.

No. 102.—Resuelto en octubre 27, 1911.

CANCELACIÓN DE PLAZOS HIPOTECARIOS—ADJUDICACIÓN DE FINCA HIPOTECADA—PROCEDIMIENTO ADECUADO.—La cuestión de si los diversos plazos de una hipoteca deben considerarse como diferentes hipotecas, esto es, que el primer plazo tiene el carácter de una primera hipoteca, el segundo de una segunda y así sucesivamente, es una cuestión legal que no ha sido aún resuelta expresamente por la ley, ni de una manera clara y terminante por la jurisprudencia, y envolviendo como envuelve una decisión sobre prelación de créditos, no debe resolverse a virtud de una moción *ex parte.*

ID.—CANCELACIÓN DE OFICIO—PROCEDIMIENTO EX PARTE.—Los preceptos del artículo 125 de la Ley Hipotecaria no son aplicables al caso en que se solicita la cancelación de los diversos plazos de una hipoteca, y en tal caso debe seguirse el procedimiento que marca el artículo 82 de la Ley Hipotecaria.

Los hechos están expresados en la opinión.

Abogado del recurrente: *Sr. Felipe Casalduc.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Por escritura otorgada en Mayagüez el once de mayo de 1900, ante el Notario Riera Palmer, Luis Arán confesó deber a Baudilio Durán ciento treinta mil pesos provinciales y se obligó a pagarlos en diez plazos que vencerían el once de mayo de cada uno de los años 1901 al 1910, suscribiendo el deudor a favor del acreedor un pagaré por el montante de cada plazo y constituyendo además dicho deudor para garantir el pago de su deuda, una hipoteca sobre determinadas fincas rústicas de su propiedad.

The American Trading Co. adquirió el pagaré que ven-

cía el 11 de mayo de 1903 y para su cobro recurrió a la vía judicial ejercitando el procedimiento sumarísimo que autoriza la Ley Hipotecaria. No pagada la deuda dentro del término del requerimiento, se subastaron seis de las fincas hipotecadas que fueron adquiridas por la misma American Trading Co. en pago parcial de su crédito.

Al reclamarse el montante del crédito de The American. Trading Co. ascendía a $10,222.63 moneda americana, y al distribuirse el gravamen entre las fincas hipotecadas en la escritura de once de mayo de 1900, se asignaron a las seis fincas subastadas y adquiridas por The American Trading Co. en pago parcial de su crédito, las siguientes responsabilidades: (*a*) 30 cuerdas, en Naranjales, $1,000 capital y $300 crédito adicional; (*b*) 11 cuerdas, en Río Cañas, $460.98 capital y $150 crédito adicional; (*c*) 4 cuerdas en Río Cañas arriba, $150 capital y $50 crédito adicional; (*d*) 2 cuerdas, en Río Cañas arriba, $50 capital y $20 crédito adicional; (*e*) 28 cuerdas, en Río Cañas arriba, $1,000 capital y $150 crédito adicional; (*f*) hacienda Collera, en Furnias, de 410 cuerdas, $29,664.11 de capital y $1,000 crédito adicional, formando en junto los totales de $32,325.09 de capital, y $1,670 de crédito adicional, ambos moneda provincial.

Una vez que se le otorgó la escritura de venta por el marshal, escritura que aparece inscrita en el Registro de la Propiedad de Mayagüez el 16 de marzo de 1908, The American Trading Company solicitó de la corte del distrito y obtuvo después de varios incidentes, sin que mediara notificación directa a los interesados, que se librara un mandamiento dirigido al registrador de la propiedad para que procediera a cancelar la hipoteca constituída en la escritura de 11 de mayo de 1911, entre otras, sobre las fincas vendidas a The American Trading Co. según se ha expresado.

El mandamiento se expidió con fecha 7 de junio de 1911 y el registrador se negó a verificar la cancelación ordenada por medio de la siguiente nota:

"No admitida la cancelación que se pretende con este documento de la hipoteca impuesta por D. Luis Arán a favor de Don Baudilio Durán, en cuanto a las seis fincas adjudicadas a la mercantil The American Trading Company, y cuya responsabilidad en junto alcanza, según el registro, a $32,325.09 m/p de capital e intereses al 6% anual y $1,670 m/p para costas, porque el artículo 125 de la Ley Hipotecaria que se invoca para la cancelación por mandamiento, sin audiencia de las personas que puedan quedar perjudicadas, se refiere a inscripciones posteriores de hipotecas y en el presente caso sólo se trata de diferentes plazos de una única hipoteca; y no habiéndose acudido para obtener la cancelación a ninguno de los medios establecidos en el artículo 82 de la ley, que es el que establece la regla general en la materia, y de conformidad además con el criterio expuesto sobre el particular por la dirección general de los registros, en resolución de 4 de mayo de 1898, deniego la operación solicitada, tomando en su lugar la correspondiente anotación preventiva,   *   *   *."

Sin que se entienda que resolvemos la cuestión de fondo envuelta en este caso, ya que este recurso gubernativo no es el procedimiento adecuado para ello, estudiaremos y resolveremos si la cancelación de que se trata debió decretarse como se decretó por la Corte de Distrito de Mayagüez, bajo la autoridad especial del artículo 125 de la Ley Hipotecaria, o si tal cancelación debió obtenerse de acuerdo con las reglas generales establecidas en el artículo 82 de la propia ley, como pretende el registrador.

Es bien claro que este caso no está comprendido expresamente dentro de las prescripciones del artículo 125 de la Ley Hipotecaria que, en lo pertinente, dice así:

"En los casos de que sobre una o varias fincas graviten créditos hipotecarios de varios acreedores y lleguen a venderse o adjudicarse para el pago al primer acreedor en términos de que el valor de lo vendido o adjudicado o no iguale o no supere al crédito hipotecario que se realice, los créditos restantes se entenderán de hecho y de derecho cancelados, y se cancelarán en el registro, previa presentación del oportuno mandamiento judicial en que consten la venta o la adjudicación y sus causas, con expresión del acto que constituya la solvencia del crédito preferido, todas las inscripciones posteriores de censos e hipotecas, y las anotaciones de embargo hechas también con posteriori-

dad, dejando libres de todo gravamen por estos conceptos la finca o fincas enajenadas o adjudicadas.''

La misma corte de distrito lo entendió así al consignar en su resolución de 2 de junio de 1911 ordenando que se librara el mandamiento solicitado por la recurrente, que aplicaba dicho artículo ''por analogía.''

En tal resolución, dictada como se ha expresado sin audiencia de todas las partes realmente interesadas, la corte de distrito resolvió de plano, que los diversos plazos de una hipoteca deben considerarse como diferentes hipotecas, esto es, que el primer plazo tiene el carácter de una primera hipoteca, el segundo de una segunda y así sucesivamente.

Dicha cuestión legal no ha sido resuelta expresamente por la ley, ni de una manera clara y terminante por la jurisprudencia, y, envolviendo como envuelve una decisión sobre prelación de créditos, no debió resolverse a virtud de una moción *ex parte.* (Véase la sec. 807 de los Estatutos Revisados de Puerto Rico.)

Para verificarse la cancelación en este caso, de acuerdo con lo dispuesto en el artículo 82 de la Ley Hipotecaria, debe presentarse en el registro la escritura o documento auténtico en el cual exprese su consentimiento para la cancelación, la persona a cuyo favor se hubiere hecho la inscripción, o sus causahabientes o representantes legítimos, o la providencia ejecutoria que debidamente la decrete, dictada en juicio contradictorio celebrado ante el tribunal competente.

Por las razones consignadas, el recurso debe declararse sin lugar y confirmarse la nota recurrida.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y Aldrey.